## LEVIN v. BLAIR et al.

(District Court, E. D. Pennsylvania. January 21, 1927.)

No. M-56.

1. **Intoxicating liquors** ⨠256—Where no action has been taken after seizure under search warrant, party averring injury may proceed by petition to quash (National Prohibition Act, tit. 2, § 25 [Comp. St. § 10138½m]; Espionage Act [Comp. St. § 10514a et seq.]).

Under National Prohibition Act, tit. 2, § 25 (Comp. St. § 10138½m), and pertinent provisions of the Espionage Act (Comp. St. § 10514a et seq.), in cases where no action has been taken by libel or attachment or otherwise after seizure under search warrant, party averring injury may proceed by way of petition that warrant be quashed and property returned.

2. **Searches and seizures** ⨠3(1)—Search warrant gives no right to seize or hold possession of real estate.

Search warrant vests no authority to seize or hold possession of real estate, or to remain on premises involved longer than is reasonably necessary to execute the writ.

3. **Intoxicating liquors** ⨠248—Affidavits held to disclose probable cause for issuance of warrant to search brewery premises (Const. U. S. Amend. 4; Espionage Act [Comp. St. § 10514a et seq.]).

Affidavits held to disclose probable cause, under Const. U. S. Amend 4, and the pertinent provisions of the Espionage Act (Comp. St. § 10514a et seq.), justifying issuance of warrant to search premises used for the manufacture of beer, and petition to quash warrant and for return of property seized was properly denied.

4. **Searches and seizures** ⨠3(10)—On petition to quash search warrant, record imports verity, and evidence that commissioner did not personally determine question of probable cause is inadmissible.

On petition to quash search warrant, record as relates to issuance of warrant by commissioner imports verity, and cannot be impeached, except for fraud; hence evidence that commissioner did not personally determine question of probable cause was properly excluded.

5. **Criminal law** ⨠304(20)—It is common knowledge that beer, in brewing, will almost certainly develop unlawful alcoholic content.

It is matter of common knowledge, of which judicial notice can be taken, that beer, in brewing, will almost certainly develop alcoholic content in excess of that permitted by law to be sold.

Petition by Michael Levin to quash search warrant and for return of property seized, opposed by David H. Blair and others. Decree in accordance with opinion, granting part only of relief sought by petitioner.

Benjamin M. Golder, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. There are several features of this cause which call for comment:

### 1. Procedure.

[1] The practice heretofore prevailing has not been uniform, and the views entertained of what it should be have been somewhat discordant. As soon as one point is settled, another arises, and those which have been settled become unsettled, or the established practice disregarded. We take this case in its procedural features as typical of a large class of search warrant cases.

On January 14, 1927, a search warrant issued to search the brewery premises of the petitioner, known as the Fisher Brewing Company, in Reading, for contraband beer, and beer and brewery supplies and utensils were seized. There is no averment beyond this, other than the detention of the property

seized, and another averment to which we will later refer. We are now dealing with merely the procedural features.

On January 18, 1927, the present petition was filed, praying (1) that the search warrant be quashed and the return set aside; (2) that the property seized be directed to be returned; and (3) that the respondents "be precluded from using in evidence any of the property so seized."

The practice is now settled, so far as concerns this court, that under section 25 of the National Prohibition Act (Comp. St. § 10138½m) and the pertinent provisions of the Espionage Act (Comp. St. § 10514a et seq.) in cases in which no action has been taken by libel and attachment, or otherwise, after a seizure under a search warrant, the party averring an injury, thereby having the right to a remedy, may proceed by way of petition and answer. To this proceeding the prohibition director and the district attorney should be made respondents, and if the search warrant be quashed, or the execution or return be set aside, the court may order the return of the property seized; but there should be an additional order prayed for that the district attorney proceed by libel or other action within a prescribed time, in default of which the property may be ordered returned upon the petitioner establishing his ownership. We will treat this petition as so praying, and dispose of it in accordance with this mode of practice.

## 2. Real Estate.

[2] The additional averment to which we have referred is that the prohibition authorities had made use of this search warrant as an authority to seize and hold possession of the real estate premises. Search warrants have nothing to do with real estate, beyond a search of it, and the officers have no right of possession, or to remain on the premises for a longer time than is reasonably necessary to execute the writ. This was flatly ruled in an opinion by Judge McKeehan. Mellet & Nichter v. U. S. (D. C.) 296 F. 765. A decree may be submitted ordering them to withdraw.

## 3. Search Warrant.

[3] The final question is one relating to the regularity of the search warrant. The Constitution of the United States provides, and the Espionage Act, of course, follows it, that no search warrant can issue, except upon probable cause. The question of the existence of probable cause must be judicially determined, and the Espionage Act puts the responsibility upon the judge or commissioner who issues the warrant. This means that he must take it upon his conscience to make this finding, and he should not issue a warrant, unless he is satisfied of the existence of probable cause. This duty is of grave and great importance, because through its faithful performance alone can the citizen be assured of a right so precious, and the preservation of which is of such concern, that it was deemed worthy of being made the subject of one of the amendments upon the incorporation of which in the Constitution its very acceptance by the people of the United States depended. It has been repeatedly emphasized that every citizen has two rights. One is that of a fair trial, if accused; the other, of equal and of really greater practical importance, is to be protected from the ignominy and expense of defending himself from unjust accusation. The latter depends mainly upon a just and conscientious magistracy, which will refuse a warrant unless probable cause be shown. This high and great responsibility the magistrate cannot evade by turning over the decision to some one else. As before stated, he is answerable to his conscience and to his official oath to decide it for himself. We have devoted much space to the statement of these truths, because of their vital importance. The very capable counsel for the petitioner has planted himself upon this solid ground, and the fair-minded district attorney has given to these propositions his sanction.

The petitioner avers that he has been denied the right which the Constitution and the laws confer, in that the warrant in this case, although in form issued by the commissioner, was in truth and fact issued, not by him, but by some one in the prohibition department, and that the commissioner did nothing more than inquire of the deponents, who made the affidavits upon which the warrant issued, whether they so swore, and upon this issued the warrant without himself giving any consideration to the question of whether the warrant should issue; the affidavits and warrant having been prepared in advance and merely submitted for his signature. If this be true, the commissioner has been led, admittedly unwittingly, into the commission of a grave error which should not be repeated. He should feel and know that his signature to a warrant is taken to mean that he has inquired into the facts, and that he (not some one else) is "satisfied" that the warrant is justified and his certificate should mean all that it imports. We cannot, however, know the fact to be otherwise than as the record shows.

[4] Counsel for petitioner offered to make proof of the fact, but objection to the evi-

dence was sustained. This is because the record imports verity, and cannot, except for fraud, be impeached. So incontestably is this doctrine of the law settled that the court itself cannot, after the term in which the record is made up, change it so as to make it conform to the real facts. The doctrine is that the verity of a record is determined by what it is, not by how much or little real consideration the judge who composed the court which entered the judgment gave to it. A moment's reflection will convince any one that this doctrine is a necessary one. If a judgment or decree is under review, it is taken for what it is, and the appellate question is not whether it was in fact rendered, but whether it is erroneous. The proceeding before us is in a real sense appellate of the judgment of the commissioner in finding probable cause; and our sole duty is, not to find how much or how little real consideration he gave to it, but whether it is supported by the evidence before him—whether he in fact weighed it or not.

This takes us to the affidavits on which the warrant issued. The tactful and adroit counsel for the petitioner argues the question as if it were one of the sufficiency of the evidence to found a finding of guilt beyond all reasonable doubt. This, however, is not the question. The petitioner is not yet on trial, and the real question is, not his guilt, but whether there is legal justification for putting him upon trial. This is the real meaning of probable cause. The petitioner was conducting a brewery for the manufacture of beer. He had no permit for a dealcoholizing plant. If, therefore, in brewing his beer, it at any time during the fermenting process exceeded the legal limit of alcohol content, he is guilty. [5] The sale of beer is in itself no evidence that the beer is illicit. There is, however, a strong probability, if not, indeed, a practical certainty, that beer in brewing will develop an alcoholic content of much over that permitted by law to be sold, and that the only way to bring it within the legal limit is to dealcoholize it. This is a matter of common knowledge, of which judicial notice can be taken. There is in this warrant evidence that beer in the form of vessel in which it is commonly marketed was shipped from this brewery. This argues the fact that beer was being there brewed, and the strong probability before spoken of arises that it was illicit beer. More than this, there were indications sworn to which would justify the thought of clandestine shipments, and there is a significance in this.

We have gone over this record with very great care, with the feeling and attitude of mind that we should quash the warrant if there was anything to justify such action, but we are unable to so find.

A decree in accordance with this opinion, in the two features of the continued occupation of the real estate premises and the refusal to quash the search warrant, may be submitted.