COMMONWEALTH *vs.* MAURICE TODISCO.

Middlesex.   December 6, 1972. — April 5, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Search and Seizure. Constitutional Law*, Search and seizure. *Evidence*, Telephone conversation, Consciousness of guilt. *Eavesdropping. Identity. Words*, "Telephone," "Intercepting device."

Where the affidavit supporting a search warrant sworn by one of the policemen who executed the warrant described with sufficient particularity the premises to be searched, and the warrant made specific reference to the affidavit, the warrant and the affidavit may be read together; a search of those premises did not violate the Fourth Amendment to the Federal Constitution, article 14 of the Declaration of Rights of the Massachusetts Constitution, or G. L. c. 276, § 2, even though the warrant, read alone, described those premises ambiguously. [448–450]

Police officers authorized by a warrant to seize "implements . . . of gaming," who, after discovering on the premises two ringing telephones without dials or earpieces, further investigated to ascertain that they were gaming implements, were authorized to seize the telephones. [450–451]

Police officers who, acting under a valid gaming warrant, discovered in an apartment two ringing telephones without dials or earpieces, had the telephones repaired, and overheard subsequent incoming calls, did not illegally use an "intercepting device" as defined by G.L. c. 272, § 99 (B) (3). [451–453]

Where information supporting a search warrant of an apartment was legally obtained by officers who, in a nearby apartment under a warrant, overheard conversations on telephones that they had repaired, evidence obtained from the execution of the search warrant was admissible. [453]

Evidence that two apartments were used for gaming purposes, that the landlord of the building where the apartments were located knew the defendant as his tenant, and that personal items belonging to the defendant and keys to one apartment were found in a search of the other was sufficient to link the defendant with the gaming charges against him. [453–454]

THREE COMPLAINTS received and sworn to in the District Court of Marlborough on July 31, 1969.

On appeal to the Superior Court, motions to suppress evidence were heard by *DeSaulnier, J.,* and the cases were tried before him.

*Herbert A. Black, II,* for the defendant.

*Terence M. Troyer,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J. The defendant was charged with (1) fraudulently obtaining telephone service;[1] (2) allowing the premises to be used for gaming;[2] and (3) allowing a telephone to be used for gaming.[3] Prior to trial[4] the defendant moved to suppress evidence alleged to have been obtained illegally. The motion was heard on a statement of agreed facts and was denied subject to the defendant's exception.

At the conclusion of the Commonwealth's case, the defendant moved for directed verdicts, which were denied subject to his exceptions. The case is here on the defendant's consolidated bill of exceptions.

We summarize the events as they appear in the record. On July 22, 1969, about 2 P.M., Trooper Edward A. Lussier of the Massachusetts State Police applied for a gam-

---

[1] G. L. c. 166, § 42A, inserted by St. 1961, c. 153.

[2] G. L. c. 271, § 17, as appearing in St. 1968, c. 116.

[3] G. L. c. 271, § 17A, as appearing in St. 1962, c. 440.

[4] The defendant was first tried and found guilty on complaints in the District Court. On appeal to the Superior Court guilty verdicts were returned.

ing search warrant and filed a supportive affidavit. The affidavit included information that a telephone numbered 481-1417 listed to Maurice Ferrante of 83 Pleasant Street, Marlborough, apartment number three, was being used in a bookmaking operation. The application for the warrant, however, stated that the rooms of apartment three, 83 Pleasant Street, were occupied "by some person, whose name is to your informant unknown." The warrant authorized a search of "the rooms of apartment number (3) of the three (3) story red brick building with white trim situated at and numbered 83 Pleasant Street in the town of Marlborough, Mass."

Sometime after 2 P.M., Trooper Lussier and other police officers went to 83 Pleasant Street and were admitted by an unknown female tenant. The building has five apartments in the basement and six apartments on both the ground and top floors. Each floor has an apartment numbered three. These apartment numbers are distinguishable in that they are preceded by the appropriate floor number. Basement apartment three is numbered "B/3"; ground floor apartment three is numbered "1/3"; and the top floor apartment three is numbered "2/3."

In the vestibule of the building, the officers executing the warrant discovered a mailbox that bore the name "Ferrante, 2/3." The officers proceeded to apartment 2/3 and receiving no response to their request to open the door, they looked through the peephole but could see no movement. One officer went outside the building and placed a call to 481–1417, listed to Maurice Ferrante, which was answered by a male voice. Another officer stated that he heard the telephone ringing while standing outside the door of the apartment. Shortly after 2 P.M., the officers made entrance to the apartment. No one was there.[5]

---

[5] A second warrant was obtained to search apartment 2/6 after police overheard telephone conversations in apartment 2/3. The evidence permits the inference that the activities in apartments 2/6 and 2/3 were interrelated. There was testimony by Sergeant White and Sergeant O'Neil that they heard several bets being placed on the telephone.

1. The defendant argues that the search of apartment 2/3 violated his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution because the warrant did not describe the place to be searched with sufficient particularity.  He also argues that the failure of the warrant to describe sufficiently the premises to be searched constituted a violation of G. L. c. 276, § 2, as appearing in St. 1964, c. 557, § 2, which requires that a search warrant "shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for."

In *Commonwealth* v. *Pope*, 354 Mass. 625, 628–629, we stated that the requirements of the Fourth Amendment, art. 14 of the Declaration of Rights, and G. L. c. 276, § 2, were similar with respect to the particularity necessary in a warrant to identify the place to be searched.  In that case, the warrant referred only to "the rooms mentioned in the above complaint," but the complaint identified the particular rooms in a numbered building on a designated street.  We held that the complaint could be relied upon to support the validity of the warrant, but we noted that the complaint was "physically attached to the warrant and a part thereof."

In the instant case, the warrant described the premises to be searched as "the rooms of apartment number (3) of the three (3) story red brick building with white trim situated at and numbered 83 Pleasant Street in the town of Marlborough, Mass."  It is agreed by the parties that there "is on each . . . [of the three floors] an apartment door with a number 3 preceded by either a letter B or an appropriate number."  It thus appears that there were three different apartments, all of which fitted the description in the warrant.

The application for the warrant, which was attached to the warrant filed by Officer Lussier, stated that the rooms in apartment three at 83 Pleasant Street were "occupied by some person, whose name is to your informant un-

known." The application does not therefore increase the particularity of the warrant, even if the warrant and the application are read together.

The affidavit supporting the warrant was filed by Officer Lussier. It recited that "a reliable informant . . . told me that telephone number 481–1417 . . . was being used in a book-making operation," and that "telephone number 481–1417 was listed to Morris [*sic*] Ferrante of 83 Pleasant St., Marlboro [*sic*], Mass. Apartment number three." If the affidavit and the warrant are read together, it is clear that the warrant described precisely the apartment to be searched, for there was only one apartment "three" purportedly occupied by Maurice Ferrante at 83 Pleasant Street in Marlborough.

We think that, in the circumstances of this case, the affidavit and the warrant may be read together. See *Dwinnels* v. *Boynton,* 3 Allen 310, 312–313; *Fry* v. *United States,* 9 F. 2d 38, 39 (9th Cir.) ; *United States* v. *Snow,* 9 F. 2d 978, 979 (D. Mass.) ; *People* v. *Grossman,* 19 Cal. App. 3d 8; *United States* v. *Moore,* 263 A. 2d 652, 653 (Ct. App. D. C.), affd. sub. nom. *Moore* v. *United States,* 461 F. 2d 1236; *Thompson* v. *State,* 198 Ind. 496; *Frey* v. *State,* 3 Md. App. 38, 46; *O'Brien* v. *State,* 158 Tenn. 400, 402; *Ellison* v. *State,* 186 Tenn. 581, 583; annotation, 11 A. L. R. 3d 1330, 1346. The parties have stipulated that Officer Lussier made out the affidavit and was also one of the officers executing the warrant issued on the basis of that affidavit. The search warrant recites that it is grounded upon "[p]roof by affidavit having been said this day before John F. Gabriel Clerk of the District Court of Marlborough, by Edward A. Lussier." No objection to the probable cause justifying the warrant has been argued. Because Officer Lussier filed the affidavit, it is evident that he knew that the apartment number "three" to be searched was in fact the apartment listed to Maurice Ferrante. The police officers executing the warrant discovered a mailbox in the vestibule of the building carying the name "Ferrante, 2/3." It was this apartment that they proceeded to search.

The Fourth Amendment, art. 14 of the Declaration of Rights, and G. L. c. 276, § 2, all protect the public "from intrusion and seizure by officers acting under the unbridled authority of a general warrant." *Stanford* v. *Texas*, 379 U. S. 476, 481, rehearing den. 380 U. S. 926. *Steele* v. *United States No. 1*, 267 U. S. 498, 503. *Commonwealth* v. *Pope*, 354 Mass. 625, 629. In the instant case, where the affidavit supporting the warrant described the premises to be searched with sufficient particularity, and the warrant made specific reference to the affidavit filed by Officer Lussier who was one of the policemen executing the warrant, we believe that the warrant and the affidavit may be read together. When they are so read together, the premises designated in the warrant are described with sufficient particularity and the warrant does not violate the defendant's constitutional or statutory rights. The motion to suppress the evidence obtained as a result of the execution of this warrant was, therefore, properly denied.

2. The defendant also argues that the search warrant was improperly executed. We examine this claim first as it relates to the seizure of the telephones in apartment 2/3. As we noted in *Commonwealth* v. *Laudate*, 345 Mass. 169, 173 (petition for cert. dism. sub nom. *Laudate* v. *Massachusetts*, 372 U. S. 951), " 'There is no formula for the determination of reasonableness [of a search]. Each case is to be decided on its own facts and circumstances.' *Go-Bart Importing Co.* v. *United States*, 282 U. S. 344, 357." See *Abel* v. *United States*, 362 U. S. 217, 234–235.

Before entering apartment 2/3, an officer went outside the building and placed a call to 481–1417 which was answered by a male voice. The officer remaining outside apartment 2/3 stated that he could hear the telephone ringing inside the apartment. When the officers entered the apartment no one was there. The warrant authorized the officers to arrest the keepers of the premises and all persons present "if any lottery, policy or pool tickets, slips, checks, manifold books and sheets, memoranda of

any bet or other implements, apparatus and materials of any form of gaming are then and there found in said rooms and to take into your custody all the implements, apparatus and materials of gaming as aforesaid." The apartment's furnishings included two black telephones which were observed to have no number discs or receiver units (earpieces). The officers discovered that when an outside call was placed to 481–1417, the two telephones in the apartment would ring in a very low tone. On answering the telephones, however, the officers found that no conversation could be heard.

The officers then requested the local telephone office to send a repairman to the building. He arrived about 2:50 P.M. and checked the terminal box. He found extra wires on the terminals to apartment 2/3 which, he testified, went to another apartment in the building, but he was unable to determine to which apartment they went. The repairman supplied the officers with two receiver units which were installed by an officer in the telephones in apartment 2/3. The telephones were then operative.

We believe that, in the circumstances of this case, the investigation of the telephone terminal box prior to seizure was not unreasonable. The officers heard the telephones ring while they were lawfully in the apartment executing the warrant. The warrant authorized the seizure of the implements of gaming, and the officers' investigation of the telephones was carried out to ascertain that the telephones were in fact such implements. The seizure of the telephones was within the scope of the authority of the warrant.

3. The defendant also maintains that the telephone conversations overheard by the officers (after they had made the telephones operative by attaching receiver units) were inadmissible. He argues that the interception and monitoring of the calls were beyond the scope of the warrant, and that attaching receiver units without a warrant for that specific purpose is a violation of G. L. c. 272, § 99.

We reject the defendant's contention that the police

search in the apartment as it involved the use made of the
telephones was in violation of G. L. c. 272, § 99. Because
the police (through the telephone company) attached
missing receiver units to the telephones to make them
operable, the defendant claims that this constituted the
illegal use of an "intercepting device" and, in the absence
of a warrant, was prohibited by statute. While this argu-
ment is ingenious it is sustained neither by logic nor
common sense. The pertinent portion of the statute pro-
vides, "[t]he term 'intercepting device' means any device
or apparatus which is capable of transmitting [or] re-
ceiving . . . communication[s] . . . other than any tele-
phone . . . or a component thereof . . . furnished to a
subscriber or user." G. L. c. 272, § 99 (B) (3), as ap-
pearing in St. 1968, c. 738, § 1.

The word "telephone" in the statute clearly has refer-
ence to a *whole instrument* as furnished to the subscriber
or user. In the circumstances a proper inference may be
drawn that the receivers were removed by the defendant [6]
to prevent the use of the telephones in his absence.[7] The
defendant cannot so easily thwart the clear intent of the
statute. Moreover such action could be construed as an
attempt by the defendant to prevent the police from se-
curing evidence of illegal betting and thus could be re-
garded as consciousness of guilt. The clear and obvious
legislative intent was to prevent the illegal use of devices
external and extraneous to the regular telephone equip-
ment. It was not to prevent the repair of a telephone or
the replacement of a missing component part of the tele-
phone in order to make it operable.

The police were lawfully on the premises by reason of

_____

[6] It is common knowledge that the usual police practice after prop-
erly gaining admittance to a place suspected of conducting the illegal
registration of bets is to use and test the telephone for possible illegal
use. The police, upon discovery that the telephones had been tampered
with, used good judgment in calling the telephone company to make
the necessary repairs so they could be tested pursuant to the authority
of the warrant.

[7] It has not been argued nor do we decide whether a subscriber or
user has a legal right to tamper with telephone equipment in this
fashion. In the instant case the missing receivers were furnished to
the police by representatives of the telephone company.

a proper warrant (one of the charges was allowing a telephone to be used for gaming, G. L. c. 271, § 17A) and were thus entitled to use and test the telephones to ascertain whether they were in fact being used for gaming purposes. *Commonwealth* v. *Jensky,* 318 Mass. 350. *State* v. *Tolisano,* 136 Conn. 210. 13 A. L. R. 2d 1405. *Riley* v. *State,* 249 A. 2d 863 (Supr. Ct. Del.), cert. den. sub nom. *Riley* v. *Delaware,* 395 U. S. 947. The motion to suppress the evidence of telephone conversations was properly denied.

4. The defendant further argues that the information contained in the affidavit supporting the search warrant for apartment 2/6 was obtained illegally, and that any evidence resulting from the execution of that search warrant should have been suppressed. We cannot agree. Most of the information contained in the affidavit concerns the content of the conversations overheard by the police officers after replacing the receiver units in the telephones in apartment 2/3. Since we have held that those conversations were not obtained illegally, it follows that the motion to suppress the evidence obtained as a result of the execution of the warrant for apartment 2/6 was properly denied.

5. The defendant finally argues that his motion for directed verdicts in his favor should have been granted because there was not enough evidence linking him with the crimes charged. The owner of the premises at 83 Pleasant Street, Steven Strong, and the officers who had executed the warrants in the building supplied evidence linking the defendant with the crimes charged.

Strong testified that when he acquired the building the records indicated that apartment 2/3 was rented by one "Maurice Ferrante" and that apartment 2/6 was rented by a "Mr. and Mrs. Carey." The rent checks for apartment 2/3 were received by mail and signed by "Maurice Ferrante." The landlord stated that he had seen the defendant walking a dog on a leash in the parking lot of the building. At that time he explained to the defendant that dogs were not allowed in the building. On one oc-

casion the defendant had passed him on the staircase and inquired, "Did you get your rent yet?" One of the officers testified that while searching apartment 2/6, Officer Lussier handed him a photograph of the defendant and two girls which had been found in the apartment. Two coats recently cleaned and pressed and bearing the labels "M. Todisco" were found in the closet, and keys fitting the door of apartment 2/3 were also discovered during the search of apartment 2/6.

The presentation of this evidence from the landlord and the officers executing the warrant was sufficient to permit the jury to conclude that the defendant was in fact either the "Maurice Ferrante" who rented apartment 2/3 or the "Mr. and Mrs. Carey" who rented apartment 2/6, or both. On the basis of any one of these conclusions, there was sufficient evidence to link the defendant with the crimes charged. The defendant's motion for directed verdicts was, therefore, properly denied.

*Exceptions overruled.*