JOHN RUSSELL HARRIS AND MICHAEL FRANCIS
SCHMITT *v.* STATE OF MARYLAND

[No. 495, September Term, 1972.]

*Decided April 9, 1973.*

The cause was argued before MORTON, MOYLAN and SCANLAN, JJ.

*Lester V. Jones* for appellants.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Harry A. E. Taylor, Assistant Attorney General,* and *John E. Kelly, State's Attorney for Harford County,* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Following a bench trial before Judge J. Albert Roney, Jr., in the Circuit Court for Harford County, the appellants, John Russell Harris and Michael Francis Schmitt, were found guilty of several violations of the narcotics laws and of maintaining a common nuisance. Each appellant was sentenced to imprisonment for a term of five years, under the jurisdiction of the Department of Corrections.

Incriminating evidence against the appellants was obtained during a police search of a dwelling house occupied by appellants and located on a dirt road in a rural area of Harford County. In their motion to suppress in the court below, and again in this Court, appellants contended that the search was illegal, in that the warrant did not describe the dwelling house with "reasonable particularity," as required by Article 27, Section 551 of the Code.[1] We disagree and so affirm the judgments.

It is appellants' contention that the search warrant on which this case turns was, in effect, a "general warrant." In *Frey v. State*, 3 Md. App. 38, 46, 237 A. 2d 774 (1968), we said:

> "A general warrant, broadly defined, is one which fails to sufficiently specify the place or person to be searched or the things to be seized, and is illegal since, in effect, it authorizes a random or blanket search in the discretion of the police in violation of the Fourth Amendment to the Federal Constitution, Article 26 of the Maryland Declaration of Rights, and Section 551 of Article 27 of the Maryland Code (1967 Repl. Vol.), all of which require that search warrants particularly describe the place to be searched and the things to be seized, so as to prevent the search of one place, or the seizure of one thing, under a warrant authorizing search of another place, or the seizure of another thing. See *Stanford v. Texas*, 379 U. S. 476; *Salmon v. State, supra.*"

The historical genesis of the Fourth Amendment is found in the vivid memory which the framers of the Bill of Rights had of the infamous "writs of assistance"

---

1. Appellants also argue that the evidence was insufficient to sustain their convictions. This point rises and falls with their claim that the search warrant was defective. Since we find that the warrant was not defective, this contention also collapses.

used against the colonies and especially the Massachusetts Bay Colony, some fifteen years before the Revolutionary War. *Boyd v. United States,* 116 U. S. 616, 627 (1886). In 1760, William Pitt, then prime minister of England, ordered the Sugar Act of 1733 to be strictly enforced. In order to enforce this unpopular law, the royal customs collectors at Boston applied to the Superior Court of Massachusetts for writs of assistance. These were general warrants allowing an officer to enter *any premises* at anytime in search of smuggled goods. Morrison, *The Oxford History of the American People* 183 (1965).[2]

Article 26 of the Maryland Declaration of Rights is almost identical in text with that of Article 23 of the original Declaration of Rights, which was embodied in the original Maryland Constitution of 1776. *Givner v. State,* 210 Md. 484, 492, 124 A. 2d 764 (1956). The article was a product of the same history of abuse and protest against general writs which gave birth to the Fourth Amendment. *Frank v. Maryland,* 359 U. S. 360, 368 (1959). The spirit and thrust of the Fourth Amendment and Article 26 of the Declaration of Rights are codified in Article 27, Section 551 of the Code, which requires that a "search warrant shall name or describe, with reasonable particularity the . . . building, apartment, premises [or] place . . . to be searched . . . ."

It is difficult to lay down any test which can be invariably applied to determine the sufficiency of a warrant's description of premises to be searched. In *Frey v. State, supra* at 46, we observed that:

> "There is, of course, no formula which can be used to measure the particularity with which premises must be described in a search warrant, the adequacy of such description in every case necessarily depending on the facts and circum-

---

2. In February, 1761, James Otis successfully argued before the Superior Court of Massachusetts that these writs were contrary to the rights of Englishmen and thus unconstitutional. *Otis: Against Writs of Assistance,* 2 Annals of America 75 (1968).

stances there present. *Tucker v. State*, 244 Md. 488, 496. *A description of a place to be searched is ordinarily sufficient if the officer with the warrant can, with reasonable effort, ascertain and identify the place intended. Steele v. United States*, 267 U. S. 498; *Saunders v. State*, 199 Md. 568. In determining whether the description of the place to be searched meets these standards, it is permissible to look to the affidavit as well as the warrant since the affidavit is a part of the warrant and incorporated by reference therein. See *Fry v. United States*, 9 F. 2d 38 (9th Cir.); *People v. DeLago*, 266 N.Y.S.2d 353; *Ellison v. State*, 212 S.W.2d 387 (Tenn.); Varon, *Searches, Seizures and Immunities*, Vol. 1, p. 319." *Id.* at 46-7 (emphasis added).

In other jurisdictions it is also the prevailing rule that the designation of the place to be searched is sufficient if the officer to whom the warrant is directed may locate that place definitely and with certainty. 47 Am. Jur. 522 (1943). It has been held that descriptions of rural property may be sufficient without demonstrating the same degree of particularity which might be required in cases involving a search of property located in a city. *State v. Stough*, 318 Mo. 1198, 2 S.W.2d 767 (1928); 74 A.L.R. 1502 (1931). Moreover, an error in the description or location of the property set out in the warrant is not automatically fatal to its validity. *United States v. DePugh*, 452 F. 2d 915, 920 (10th Cir. 1971); *People v. Fleming*, 221 Mich. 609, 192 N. W. 625, 626 (1923). The cardinal consideration is that the premises be described with such particularity or sufficiency, "that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States No. 1*, 267 U. S. 498, 503 (1925); *Frey v. State, supra* at 46. We believe that the warrant involved in this case complied with constitutional and

statutory requirements of particularity in the description of the premises which were searched.

The application, which formed a part of the warrant, described the property as follows:

> "[A] . . . one story wooden frame dwelling house, white in color with a dark V shape roof. Said dwelling house is located on a dirt road one (1) mile South of Cedar Lane, Bel-Air, Harford County, Maryland. Said dwelling house is situated on the left side of dirt road, front of said dwelling house faces the dirt road. Located on the North side of said dwelling house is a small V shaped garage which is white in color."

In addition, the affidavit, which also was attached to and made a part of the warrant, contained the following information relative to the premises:

> "Lieutenant Tabeling advised that the aforesaid Confidential Informant stated that on November 4, 1971, he was in a house located on Cedar Lane, Belair, Harford County, Maryland, which is the same house as hereinbefore mentioned. This house was occupied by a white male known to the informant as JOHN HARRIS who is approximately twenty (20) years of age, and by a white male known as MIKE SCHMIDT who is approximately twenty-four (24) years of age."

Robert E. Comes, a Harford County Deputy Sheriff, testified at the hearing on appellants' motion to suppress. Comes was present and assisted in the execution of the warrant in question. Comes described the general location of Cedar Lane. He testified that at approximately four tenths of a mile into Cedar Lane there was a trailer. A little further down Cedar Lane there was another house on the left-hand side. That house, Comes said, was a gray shingle, one-story bungalow. Several

trucks were parked around it. This bungalow was approximately five tenths of a mile down Cedar Lane. The next house down the road was just a little over nine tenths of a mile into Cedar Lane. Comes described this house as a white bungalow with a dark gray looking roof of the V-type. Next to it was a small garage with a V-type roof, which was white in color. These were the premises which matched the description in the warrant, except the house was located on the right, not the left, side of the road. Another tenth of a mile down Cedar Lane, Comes testified, there was a barn sitting in the circle, beyond which sat a large, two-story white house, the front of which faced the dirt lane and circle at the end of Cedar Lane.

Deputy Sheriff Comes testified that on the night the search warrant was executed he had no difficulty in finding the house in question. He was familiar with the area and had been there on prior occasions. He did not have to inquire of anyone in order to determine the location of the premises to be searched.

Deputy Sheriff Comes was then questioned and answered as follows:

"Q. Is there any other house on the road that would fit the description [from the warrant] I just gave you?

"A. No, sir. It is the only house in that area that has this type of roof and has that type of garage next to it, a small garage, a one car garage.

"Q. Is it the only one story home that would fit that description?

"A. Yes, sir."

Another police officer, called as an adverse witness by the appellants, testified on direct examination that it would have taken some time for him to find the premises to be searched, since "I think the instructions are vague." On cross examination, however, he was asked this question and answered as follows:

"Q. Now, isn't it true that the Schmitt residence is the only one story white frame house on that road which is white in color with a garage with a V-shaped roof that is approximately one mile south on Cedar Lane, and that is the only house that fronts on that dirt road, directly on that dirt road, and it is the only house with a V-shaped garage which is white in color?

"A. On that road that I could find, yes."

A real estate salesman, who was familiar with Harford County and the premises in question, testified that on the basis of the directions set forth in the application for the warrant the property "would be impossible to find."

The only error in the description of the property was the statement that it was situated on the left side of the dirt road, whereas, it was located on the right side of Cedar Lane if one is entering from the main road. Of the four structures located on Cedar Lane, the dwelling house occupied by the appellants, and the object of the search, was the only building which matched the premises described in the warrant and supporting application. Additionally, the occupants of the house were named in the affidavit attached to the warrant. The property searched was located in a rural area and had no street address which could be used to identify it. Nevertheless, the arresting officers were able to proceed directly to the house without stopping to inquire as to its location. And, as in *United States v. DePugh, supra* at 920, there is no claim asserted that the search was made at the wrong house. Under these circumstances, the error in the description of the precise location of the dwelling house "is not fatal to the warrant." *Id.*

On facts presented, the trial judge did not err in finding that the premises searched had been described with the "reasonable particularity" required by the statute. To the contrary, his conclusion is compellingly correct.

The departed spirits of James Otis and John Adams will not be disturbed by his holding; nor are we.

*Judgments affirmed; appellants to pay costs.*