**STATE of Utah, Plaintiff and Respondent,**

v.

**Aldon S. ANDERSON, Defendant and Appellant.**

**No. 18934.**

Supreme Court of Utah.

June 7, 1985.

Jay Fitt, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Aldon S. Anderson was convicted of a violation of U.C.A., 1953, § 58–37–8(a)(i), production by cultivation of a controlled substance (marijuana). He appeals the denial of a pretrial motion to vacate the search warrant and exclude evidence seized thereunder. We affirm.

On August 26, 1982, Doug Witney, Utah County Deputy Sheriff, filed an affidavit to secure a search warrant authorizing a search of defendant's property for cultivated marijuana plants. In the affidavit, Witney stated he had received information from a previously reliable informant that a wooden fence, approximately 6 feet high and enclosing an area 100 feet by 100 feet, would be built on Anderson's property to the north side of his home for the purpose of concealing marijuana plants being cultivated. Witney also stated that another officer, Frank Wall, had received independent verification from a previously reliable source of the construction of the fence and its purpose. Witney stated he had personally verified the construction of the fence in the described location.

Based on this affidavit, the circuit judge issued a warrant to search

the residence located ½ mile North of Maggie's Bend on SR156 Spanish Fork, Utah County, Utah ... which the premises are described as a white frame home located on the West side of the road facing East, with a small pond on the North side of the home, for the presence of marijuana....

Three officers went to defendant's home to search. Witney served defendant with the warrant, explained what it was, and gave defendant a Miranda warning. Another officer told defendant that he wanted to search the fenced enclosure that was approximately 100 feet north of the house. Defendant raised no objection.

Within the enclosure were found more than 100 large, well-cared-for marijuana plants. Defendant told the officers that he was being paid $30,000 to grow the plants, but he refused to name the principals out of fear for his safety. He was thereupon arrested for production and cultivation of a controlled substance.

On November 23, 1982, subsequent to a preliminary hearing and arraignment, defendant's motion to vacate the search warrant and suppress evidence was heard. The judge found that both the affidavit in support of the search warrant and the search warrant itself, on their faces, failed to meet the tests laid down in *Aguilar v. Texas*,[1] *Spinelli v. United States*,[2] and *Mapp v. Ohio*.[3] However, he found that the facts of the case did "not establish a substantial violation of defendant's Fourth Amendment rights" and denied the motion. Defendant was found guilty in a trial before the bench.

Defendant's first contention on appeal is that the affidavit in support of the warrant was defective on its face because the source of the information it contained was questionable and the quality of the information was inadequate. In support of his contention, defendant cites *Aguilar* and *Spinelli*, which hold that the Fourth Amendment requires that affidavits based on informants' tips must set out underlying circumstances sufficient to (1) reveal the basis of an informant's knowledge, and (2) establish the veracity of the informant or, alternatively, the reliability of his report in a particular case. Defendant argues that the finding of the trial judge that the affi-

davit on its face failed to meet the *Aguilar-Spinelli* test should be dispositive.

In *State v. Anderton*,[4] this Court reviewed the *Aguilar-Spinelli* test and observed that it was not to be mechanically applied, but that a magistrate should use his common sense in issuing warrants.[5] The Court also noted that the United States Supreme Court in *Illinois v. Gates*[6] had abandoned the rigid *Aguilar-Spinelli* test.[7] In so doing, the Supreme Court reaffirmed the more flexible "totality of the circumstances" standard.[8] More recently, in *Massachusetts v. Upton*,[9] the Supreme Court specifically reiterated that it had not merely refined or qualified the *Aguilar-Spinelli* test, but had "rejected it as hypertechnical and divorced from [reality]."[10]

Nevertheless, in *State v. Bailey*,[11] we observed that even under the *Gates* "totality of the circumstances" standard, compliance with the *Aguilar-Spinelli* guidelines might be necessary to establish the requisite "fair probability" that the evidence sought actually exists and can be found where the informant so states. However, in other cases, "a less strong showing of the basis of the affiant's knowledge, veracity and reliability may be required, if the

1. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

2. 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

3. 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

4. Utah, 668 P.2d 1258 (1983).

5. Quoting from *Spinelli, supra* note 2, at 419, 89 S.Ct. at 590, this Court stated:
   [P]robability, and not a prima facie showing, of criminal activity is the standard of probable cause.... [I]n judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, and that their determination of probable cause should be paid great deference by reviewing courts.
   *Supra* note 4, at 1260 (footnotes omitted).

6. 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

7. *Supra* note 4, at 1260–61.

8. [W]e conclude that *it is wiser to abandon the "two-pronged test"* established by our decisions in *Aguilar* and *Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis* that traditionally has informed probable-cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
   *Supra* note 6, at 238 (citations and footnotes omitted) (emphasis added).

9. —— U.S. ——, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984).

10. *Id.* at 2087.

11. Utah, 675 P.2d 1203 (1984).

circumstances as a whole indicate that the informant's report is truthful." [12]

In the instant case, the affidavit, viewed in its entirety and in a common-sense fashion, sets forth sufficient underlying circumstances to support the reliability and credibility of the informant and the conclusions of the affiant.

First of all, according to the affidavit, Witney's informant had previously given the affiant reliable information, an accepted method for establishing an informant's veracity. [13] Next, the same information had been received independently by a second officer from another informant who had previously provided reliable information. Furthermore, the reliability of the informant's information was bolstered by the detail with which the informant described the proposed enclosure. [14] Finally, there was verification of the significant facts by the officer. [15] Witney himself went to Anderson's property and observed that an enclosure of the height and size and in the location described by the informants had been constructed. Witney also observed plastic material placed over the fenced area. Having personally verified all but one piece of information provided by the informant, the officer thus had reasonable grounds to believe that the remaining piece—that Anderson was growing marijuana plants inside the enclosure—was also true. [16]

Given this information contained in the affidavit, the magistrate clearly had "a substantial basis for ... conclud[ing]" that probable cause existed. [17]

Defendant next contends that the search warrant did not give the officers authority to search the enclosure to the north of the "white frame home" described in the warrant as the place to be searched.

■ The adequacy of a description in a search warrant depends in every instance upon the particular facts of the case. [18] In *Steele v. United States,* [19] the United States Supreme Court described the standard by which the adequacy of a description must be judged: "It is enough if the description is such that the officer with a search warrant can *with reasonable effort* ascertain and identify the place intended." [20]

Since *Steele,* a number of courts considering the question have determined that a law enforcement officer's "reasonable effort" to determine the place to be searched under a warrant may include a review of the supporting affidavit. [21]

■ The search warrant in the instant case identified Anderson's property by location and further described it by description of the home and pond. It did not mention the enclosure. *See supra.* However, the warrant did specifically refer to the affidavit submitted by Witney to the judge in support of the petition for a search warrant. That affidavit makes it clear that the request was specifically for a warrant to search the enclosure to the north of Anderson's home and only that enclosure. The

---

12. *Id.* at 1205–06.

13. *See McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

14. *See State v. Romero,* Utah, 660 P.2d 715, 719 (1983).

15. *See Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (*overruled on other grounds, United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *aff'd on cited point* in *Illinois v. Gates, supra* note 6, 462 U.S. at 241, 103 S.Ct. at 2333); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

16. *See Draper, supra* note 15, at 313, 79 S.Ct. at 333.

17. *See Jones, supra* note 15, at 271, 80 S.Ct. at 736.

18. *See, e.g., Tucker v. State,* 244 Md. 448, 224 A.2d 111 (1966), *cert. denied,* 386 U.S. 1024, 87 S.Ct. 1381, 18 L.Ed.2d 463 (1967).

19. 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925).

20. *Id.* at 503, 45 S.Ct. at 416 (emphasis added).

21. *See, e.g., Ellsworth v. State,* Alaska, 582 P.2d 636 (1978); *State v. Paschke,* Mont., 527 P.2d 569 (1974); *State v. Bisaccia,* 58 N.J. 586, 279 A.2d 675 (1971).

affidavit described in detail the size of the enclosure, its location, and the materials of which it was constructed. Furthermore, the warrant was served by the affiant, Witney, along with other officers, and the search was conducted by Witney. Under similar circumstances, other courts have held the searches valid. For example, in *Commonwealth v. Todisco*,[22] the warrant at issue described the location of a building which housed three apartments, but did not identify defendant's apartment. The defendant claimed that the warrant did not describe the location of his apartment with sufficient particularity, and thus the search of his apartment was invalid. The court discounted this argument, reasoning that since the affidavit in support of the warrant described precisely the apartment to be searched, the warrant made specific reference to the affidavit, and the affiant executed the search warrant, the affidavit and the warrant could be read together and the search was valid.[23]

We find this logic persuasive because it limits the search to the confines contemplated by the magistrate authorizing the warrant, while not invalidating searches because of minor technical deficiencies in the warrant's description. Because the area searched (the enclosure) was the area for which probable cause had been made out, and the affidavit adequately identified that area, the search was valid.

■ Finally, the defendant argues that U.C.A., 1953, § 77-35-12(g), Utah's statutory good-faith exception to the exclusionary rule, is unconstitutional. It is a fundamental rule that this Court should avoid addressing constitutional issues unless required to do so.[24] In light of our determination that there was sufficient probable cause to issue the search warrant and that the search was properly undertaken, we need not reach the constitutional issue.

The defendant's conviction is therefore affirmed.

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

STEWART, Justice (concurring in result):

I do not agree with the majority's reading of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and more importantly I do not agree that the scope of the search warrant can be expanded beyond its own language by the language in the underlying affidavit. Nevertheless, I concur in the result because I believe the search warrant was on its face sufficiently broad to allow a search of the fenced enclosure.

I.

*Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), infuse the Fourth Amendment warrant requirement with vitality by requiring that an affidavit in support of an application for a warrant reveal that there is a reasonably reliable basis in fact for a finding of probable cause to support the issuance of a warrant. This requirement is the only real protection that citizens have against an agent of the state intruding on the privacy of their homes and effects on only the slightest pretext, or even no pretext at all. The basis of the affiant's knowledge must be set forth in the affidavit together with some evidence supporting the veracity of the informant when the affidavit includes allegations of a confidential informant. Without such a foundation, a warrant becomes a mere charade, and the basic liberty protected by the Fourth Amendment would constitute an unenforceable right, or, more realistically stated, no right at all.

*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), dealt with a factual situation in which the technical re-

**22.** 363 Mass. 445, 294 N.E.2d 860 (1973).

**23.** *See also People v. Grossman*, 19 Cal.App.3d 8, 96 Cal.Rptr. 437 (1971); *People v. Salazar*, 39 Colo.App. 409, 568 P.2d 101 (1977). *See generally* Annot., 11 A.L.R.3d 1330 (1967).

**24.** *State v. Wood*, Utah, 648 P.2d 71 (1982); *Hoyle v. Monson*, Utah, 606 P.2d 240, 242 (1980).

quirements of *Aguilar* and *Spinelli* were not met, but the basic objective of requiring a degree of reliability for the allegations in support of the warrant was nonetheless established by a tight web of circumstantial evidence. The evidentiary reliability in establishing probable cause was so compelling as to demonstrate even greater reliability than often occurs by literal compliance with the *Aguilar* and *Spinelli* standards. For that reason, the United States Supreme Court in *Gates* observed that a magistrate could employ a "totality of the circumstances analysis" to assure an adequate basis for probable cause. That is not to say that the "common sense" approach to the "totality of the circumstances" standard can be justified to sap the requirement of reasonable reliability required by *Aguilar* and *Spinelli*. As we stated in *State v. Bailey*, Utah, 675 P.2d 1203, 1205 (1984):

> However, even under [the *Gates*] standard, compliance with the *Aguilar-Spinelli* guidelines may be necessary to make a sufficient basis for probable cause. Depending on the circumstances, a showing of the basis of knowledge and veracity or reliability of the person providing the information for a warrant may well be necessary to establish with a "fair probability" that the evidence sought actually exists and can be found where the informant states.

### II.

Apart from the effect of *Gates*, I do not agree that the scope of a search warrant can be expanded by the language of the supporting affidavit, unless (1) the affidavit accompanies the warrant at the time it is executed and (2) the magistrate uses suitable words of reference in the warrant to incorporate the affidavit.

A valid search warrant establishes the authority of officers to search in areas where they otherwise have no right to be, and the authority of the officer does not extend beyond that stated in the warrant. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2004

N. 7, 29 L.Ed.2d 619 (1971); *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In *Marron v. United States*, 275 U.S. 192, 195–96, 48 S.Ct. 74, 75–76, 72 L.Ed. 231 (1927), the Court stated:

> General searches have long been deemed to violate fundamental rights.
>
> . . . .
>
> The requirement [of the Fourth Amendment] that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.

In *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980), the Court held that "[w]hen an official search is properly authorized—whether by consent or by the issuance of a valid warrant—the scope of the search is limited by the terms of its authorization." Likewise, in *Trupiano v. United States*, 334 U.S. 699, 710, 68 S.Ct. 1229, 1234, 92 L.Ed. 1663 (1948), the Court stated:

> It is a mistake to assume that a search warrant in these circumstances would contribute nothing to the preservation of the rights protected by the Fourth Amendment. A search warrant must describe with particularity the place to be searched and the things to be seized. Without such a warrant, however, officers are free to determine for themselves the extent of their search and the precise objects to be seized. This is no small difference. It is a difference upon which depends much of the potency of the right of privacy. And it is a difference that must be preserved even where contraband articles are seized in connection with a valid arrest.

A lawfully issued warrant not only protects a citizen's right of privacy as to areas not authorized to be searched, but it also tends to minimize confrontations between officers and citizens by specifically stating the limits of an officer's authority to intrude into protected areas. A search that goes beyond the scope of the search autho-

rized by the warrant itself has no legal authorization.

It follows from the principles just enunciated that, as a general rule, the lawful scope of an authorized search warrant may not be defined by reference to an affidavit submitted to a magistrate in support of the application for the warrant. "There is a fundamental distinction between the warrant and the underlying affidavit, and the affidavit is not necessarily either part of the warrant or available for defining the scope of the warrant." *Moore v. United States*, 461 F.2d 1236, 1238 (D.C.Cir.1972). *Accord United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir.1976). The only exception to this general rule occurs when (1) the affidavit accompanies the warrant at the time of its execution, and (2) the warrant uses "suitable words of reference" which incorporate the affidavit by reference. All the federal courts of appeals that have considered this question have so held. *Moore v. United States*, 461 F.2d 1236, 1238–1239 (D.C.Cir.1972); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir.1980); *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir.1982); *United States v. Cook*, 657 F.2d 730, 736 (5th Cir.1981); *United States v. Gusan*, 549 F.2d 15, 16 (7th Cir.1977); *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir.1976); *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir.1982); *United States v. Rael*, 467 F.2d 333, 335 (10th Cir.1972). Several states have similarly held. *People v. MacAvoy*, 162 Cal. App.3d 746, 209 Cal.Rptr. 34 (1984); *People v. Tockgo*, 145 Cal.App.3d 635, 193 Cal. Rptr. 503 (1983); *Harris v. State*, 17 Md. App. 484, 302 A.2d 655 (1973); *Phenix v. State*, 488 S.W.2d 759 (Tex.Crim.1973). *See also* 2 W. LaFave, *Search and Seizure* § 4.5(a) at 73–74 (1978).

The requirement that the affidavit accompany the warrant is important, not only because it limits the discretion of the officer executing the warrant, but also because it notifies the person being searched of the places to be searched and the items to be seized. *In re LaFayette Academy*, 610 F.2d 1, 5 (1st Cir.1979); *United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir.1970);

*People v. MacAvoy*, 162 Cal.3d 746, 209 Cal.Rptr. 34, 40 (1984).

It follows that when a magistrate authorizes a search narrower than sought or suggested in the affidavit, the officers executing the warrant may not ordinarily use the affidavit to expand the scope of the authorized search. *Moore v. United States*, 461 F.2d 1236 (D.C.Cir.1972) (dictum); *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Idaho App.1983). This is so because the narrow wording of the warrant

> may reflect a judicial determination to limit the search. At any rate, the officer executing the warrant must act on that assumption and we cannot expect or permit him to determine why or on what basis the language was narrowed when the judicial officer signed the document establishing [the officer's] authority to intrude on the privacy of homes or other premises.

*Moore v. United States*, 461 F.2d at 1239.

The warrant in this case did not incorporate the affidavit or otherwise refer to the affidavit's description of the place to be searched. The warrant's only reference to the affidavit was in its first sentence, which stated: "Proof by affidavit having been made before me this 26th day of August 1982, that there is probable and reasonable cause to believe that there is presently located in the following described premises the property set forth...." Given this language, the majority errs, in my view, in referring to the affidavit to broaden the scope of the warrant. A passing reference to an affidavit to expand the scope of the warrant can only lead to subverting the fundamental values that the warrant is designed to protect. *Commonwealth v. Todisco*, 363 Mass. 445, 294 N.E.2d 860 (1973), is distinguishable because the affidavit in that case was relied on only to correct what was clearly an error in the address of the apartment to be searched, not to expand the scope of the search. Furthermore, it was the affiant who executed the warrant in that case and the affidavit was relied on only to correct

an obvious error in the warrant as to the correct location of the place to be searched. When the scope of the search is involved, the knowledge of the judge issuing the warrant is determinative.

III.

Nevertheless, the warrant in this case was sufficiently broad, in my view, to include the fenced area north of the defendant's home. When the term "residence" is used in a search warrant as a general term describing the place to be searched, that term encompasses not only the dwelling house but also the curtilage as well. *See Drummond v. United States*, 350 F.2d 983, 989 (8th Cir.1965); *Griffith v. State*, Ala.Cr.App., 386 So.2d 771 (1980). *Compare Taylor v. State*, 134 Miss. 110, 98 So. 459 (1924) (search of an outhouse invalid where the warrant authorized search of a "building used as a residence"). However, the term "residence" does not extend to outbuildings not associated with the residence. *See United States v. Thomas*, 216 F.Supp. 942, 945 (N.D.Cal.1963).

In this case, the search warrant described the property to be searched as "the *residence* located ½ mile north of Maggie's Bend on SR156 Spanish Fork, Utah County, Utah ... which the premises are described as a white frame home located on the West side of the road facing East, with a small pond on the North Side of the home...." (Emphasis added.) On this record, I believe that it can fairly be inferred that the place searched was within the curtilage.