[Civ. No. 3730. Fifth Dist. Jan. 24, 1978.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
WILLIAM CARL WILLIAMS, Real Party in Interest.

COUNSEL

Albert M. Leddy, District Attorney, and Tom Clark, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Simrin & Moloughney and Stanley Simrin for Real Party in Interest.

OPINION

HOPPER, J.—On September 15, 1977, an information was filed against real party (herein Williams) charging him with two counts of burglary, two counts of grand theft, one count of receiving stolen property, one count of arson, one count of felonious possession of an explosive device, one count of attempted murder, and one count of possession of altered and defaced property. A subsequent count was later added to charge a conspiracy to commit murder.

On October 11, 1977, a hearing began on several motions, including a motion to suppress. On October 24, 1977, the court suppressed some of the evidence seized during two searches. One search was of a mini-storage shed and the second search was of a residence. Both searches were conducted under color of a warrant, and the primary issues involve probable cause to support it and the particularity with which it describes the items to be seized.

The warrant was issued by a magistrate upon an affidavit by Sergeant Payne of the Bakersfield Police Department. The affidavit was based upon facts given to Sergeant Payne by an informant, Cindy Duffle, a girlfriend of Williams. Duffle had been involved in the crimes charged in the information against Williams and had evidently decided to become an informant against him in order to minimize her own criminal liability.

The warrant authorized a search of Williams' residence on Dell Avenue in Bakersfield and a mini-storage unit leased by Williams under an assumed name. The basis for the search of the residence was knowledge provided by Cindy Duffle that a substantial amount of stolen oilwell drilling equipment was located there. The search of the mini-storage shed was based upon a previous warrantless search by Officer

Pendleton, who, having responded to a call by the manager of the storage complex, was given permission by the manager to inspect what petitioner claims to have been abandoned premises.

Detective Horton and other members of the Bakersfield Police and Sheriff's Department executed the warrant at the residence. As a result of the search they seized a large number of items claimed by Duffle to have been stolen, although only a few of these items were described in the warrant. To assist the officers in the search, Duffle accompanied them to the residence and pointed out not only where they might find incriminating evidence, but also what items had been stolen. Detective Horton testified that without Duffle's assistance he would have had no idea what items to seize. Based on the ground that the warrant was too general, the trial court suppressed all but 11 items.

The other part of the warrant was executed by different officers of the Bakersfield Police Department when they searched a mini-storage shed leased by Williams under an assumed name. Prior to that search, the manager of the complex had called the Kern County Sheriff's Department to report the discovery of some apparently abandoned and possibly stolen oilfield equipment. Pendleton went to the complex and was escorted to the shed by the manager. The manager told Pendleton that the rental payments were in arrears and that the padlock had been removed, indicating to him that the shed had been abandoned. The manager, acting on this assumption, entered the shed, discovered the equipment, and placed his own lock on the door until the sheriff arrived. The manager then unlocked the door for Pendleton, who entered to inventory the equipment. His search was the basis for probable cause to issue the warrant. The trial court held that Pendleton's search was unlawful and therefore did not constitute probable cause to issue a warrant. The People now seek a writ to overturn these rulings.

 Because Duffle was an untested informant, her information had to be corroborated by other facts, sources, or circumstances pertaining to Williams' criminal activity. (*People* v. *Fein* (1971) 4 Cal.3d 747, 752-753 [94 Cal.Rptr. 607, 484 P.2d 583]; *People* v. *Talley* (1967) 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564].) Williams contends that Duffle was an unreliable informant who was not sufficiently corroborated. We disagree. Her information was corroborated on at least two points relating to Williams' criminal activity.

First, Duffle stated to the affiant (Officer Payne) that she had witnessed stolen oilfield equipment being stored in the mini-storage shed subsequently searched by Officer Pendleton. Pendleton's inventory clearly indicated that Duffle had accurately revealed the existence of the stolen goods. Second, Duffle told the affiant the location of stolen property in Albuquerque, New Mexico. At that time Officer Payne was not aware that the New Mexico authorities had discovered the equipment, but a subsequent check with the Bernalillo County Sheriff's Department in New Mexico verified Duffle's statement, because the sheriff there had discovered 26 stolen bits at the place Duffle said they were hidden. Although the equipment was discovered before Duffle became an informant, Officer Payne had no knowledge of the discovery until after he had contacted the New Mexico sheriff. That contact resulted in a confirmation of the accuracy of Duffle's knowledge concerning activity in which Williams had been engaged. Based solely upon these two corroborated items, the magistrate was correct in relying upon the informant's reliability.

We also reject Williams' contentions based on the motive of Duffle. ▮ Criminal informants universally seek a bargain in their favor in exchange for information. Motive becomes irrelevant when adequate corroboration exists, as it does here. ▮ Williams has not shown that the informant's reliability was manufactured or misrepresented as discussed in *Morris* v. *Superior Court* (1976) 57 Cal.App.3d 521, 528 [129 Cal.Rptr. 238]. Duffle was correctly determined to be reliable for purposes of probable cause.

▮ The trial court ruled that the search warrant was too general with respect to all but 11 of the items seized at the residence.

▮ Under the California Constitution and the Penal Code a warrant must describe the things to be seized with reasonable particularity (Cal. Const., art. I, § 13; Pen. Code, §§ 1525, 1529). When reviewing a ruling on the sufficiency of the warrant, this court is limited to the four corners of the warrant itself (*Thompson* v. *Superior Court* (1977) 70 Cal.App.3d 101, 112 [138 Cal.Rptr. 603]). ▮ The warrant in this case described the property to be seized as follows:

"In addition, the following described property which is reasonably believed to be located at 3004 Dell Avenue, the aforedescribed residence:

a red, white and blue sleeping bag;

girl's approximately 24″, possibly blue, bicycle, with a design on the seat;

rotary type lawn mower, red in color;

black iron skillet, now being used or stored in the kitchen cabinets or under the oven in the abovementioned residence;

2 sets 14″ to 15″ security hole opener cutters attached to a hole opener;

approximately 30 oil and water drill bits in sizes from 4″ to 18″, said 30 oil and water drilling bits having some altered and defaced serial numbers;

acetylene and oxygen tanks, cutting and welding torches;

and in addition to the aforementioned stolen property, contraband in the nature of marijuana and its derivatives, and Methedrine and derivatives of same; and further a grinder, punches, metal stamps for stamping serial numbers bills and receipts for the purchase and repairs of metal numbering stamping equipment, and a metal tool box containing tools for the dismantling of oil field tongs and equipment. Also, two hand held walkie-talkies, possibly Realistic brand, operating on Channels 22 and 14, black in color, and five cassette tapes marked Chuck Quill, Dick Medley, John Morehouse, Joe Reedy and Sonny Colbert, and any recording device or apparatus attached to or unattached to any telephone line or other communication equipment, and any other cassette tapes that might be located at the aforementioned residence. Additionally, any and all weapons of any type which are by their very nature illegal or unlawful to possess; . . .″

At the residence five categories of items were mentioned in the warrant but were suppressed: the security hole opener cutters, drill bits, acetylene torches, the bills and receipts, and the metal tool boxes.

We are required by the Constitution to determine if the affidavit and the warrant describe the property with particularity, i.e., place a meaningful restriction on the objects to be seized. Whether the description in the warrant is sufficiently definite is a question of law on which an

appellate court makes an independent judgment. (*Thompson* v. *Superior Court, supra,* 70 Cal.App.3d 101, 108.)

In determining whether a meaningful restriction has been placed on the objects to be seized, the courts have held as follows: "All of the financial records" is insufficient (*Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590]); "any and all other records and paraphernalia" connected with the business being searched is insufficient (*Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 795-796 [13 Cal.Rptr. 415, 362 P.2d 47]); "certain personal property used as a means of committing . . . larceny" is insufficient (*People* v. *Mayen* (1922) 188 Cal. 237, 242 [205 P. 435, 24 A.L.R. 1383], overruled on different grounds, *People* v. *Cahan* (1955) 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513]); personal property "tending to identify the person in control" is sufficient (*People* v. *Howard* (1976) 55 Cal.App.3d 373, 376 [127 Cal.Rptr. 557]); stolen merchandise is insufficient when an inventory could have been provided (*Lockridge* v. *Superior Court* (1969) 275 Cal.App.2d 612, 625 [80 Cal.Rptr. 223]); "bank statements, checkbooks and other evidences of indebtedness" too broad (*Griffin* v. *Superior Court* (1972) 26 Cal.App.3d 672, 695 [103 Cal.Rptr. 379]); "bookmaking paraphernalia" held sufficient (*People* v. *Barthel* (1965) 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290]; "illegal deer meat and/or elk meat, etc." is sufficient (*Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 868 [34 Cal.Rptr. 251]); "other evidence" is insufficient (*Stern* v. *Superior Court* (1946) 76 Cal.App.2d 772, 784 [174 P.2d 34]); "stolen property" insufficient (*Thompson* v. *Superior Court, supra,* 70 Cal.App.3d 101, 105); ". . . nothing is left to the discretion of the officer executing the warrant" (*Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74]). (See generally, Cook, *Requisite Particularity in Search Warrant Authorizations* (1971) 38 Tenn.L.Rev. 496.)

We consider each of the items ordered suppressed in the light of the above-stated rules. In this case, two sets of cutters were adequately described, but five sets were not. From the face of the warrant the police were only authorized to seize two 14-inch security hole opener cutters. Any other seizure was not authorized by the warrant. Without a specific means of identification, the police had no means of distinguishing legitimate goods from stolen goods. Therefore, the warrant, as to the five large cutters, was too broad.

We conclude that the two 14-inch cutters were improperly suppressed, but that the other cutters were properly suppressed.

The drill bits were described in the warrant only to the extent that some of them had defaced or altered serial numbers. Of the 34 bits seized, 13 had suspect serial numbers or no numbers at all. The defaced bits were adequately described because an officer could, by his own observation, determine whether the serial numbers had been changed. With respect to the unaltered bits, however, no adequate description existed in either the warrant or the affidavit.

From the testimony of the officer, it is clear that the warrant failed to limit the scope of the search to specific drill bits. Thus, the court properly suppressed the bits that had legitimate serial numbers. Since the police could have found the altered bits by the warrant, these bits were properly seized and the court should not have suppressed them.

The acetylene torches and the metal tool boxes were listed in the warrant, but were not described in any detail. Nevertheless, the police only found one set of tanks and torches and several tool boxes. The torches were adequately described in the warrant because a limitation on the quantity and type was mentioned, but the description of the tool boxes could have permitted the seizure of innocuous as well as stolen tools. Therefore, the court properly suppressed the tool boxes.

The papers found in a briefcase, box, and filing box were seized under the general description of "bills and receipts." Under the description in the warrant the police officers had too much latitude in their search. Without a narrower description of what types of bills and receipts were to be seized or where they were to be found, the officers could have seized any piece of paper in the house, regardless of its relevance, on the pretext that it was described in the warrant. Therefore, the warrant was too general and the papers seized were properly suppressed.

To summarize: The warrant was too broad as to the large cutters, the unaltered bits, the tool boxes, and the papers; thus, those items were properly suppressed. The altered bits, the 14-inch cutters, and the torches were adequately described, however, and should not have been suppressed.

■ We reject the contention of petitioner that the informant can legitimately be used at the scene to point out what items should be seized. Such a concept violates the rule of leaving no matters to the discretion of the officer. Penal Code section 1523, describing a search

warrant, does *not* authorize a third party to be on the premises. The aid contemplated by Penal Code section 1530 is aid in executing the warrant, not in making the warrant sufficient. Specificity must be shown in the warrant itself and cannot be supplied at the scene by the informant. To allow otherwise would be to thwart the main purpose of a warrant, which is to interpose a cool, detached, judicial mind between the officers and the search to eliminate discretion in the officers (*People* v. *Hill* (1969) 12 Cal.3d 731, 762 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on different grounds, *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872]). ■ Here the description as to the items we suppress was too broad and too much discretion was left to the officers.

■ Petitioner asserts that even if the warrant was too general with respect to the items seized, the police officers still had authority to seize them under the plain view doctrine. ■ When officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently as a result of the officers' efforts (*People* v. *Hill, supra,* 12 Cal.3d 731, 762; *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 157-158 [81 Cal.Rptr. 613, 460 P.2d 485]). However, police officers are not authorized to seize items indiscriminately. Instead, they must show that a nexus exists between the item to be seized and criminal behavior (*People* v. *Hill, supra,* 12 Cal.3d 731, 762).

■ The nexus between the seized items and the alleged criminal behavior is claimed by petitioner in three ways: by the fact that serial numbers were altered, the knowledge of the officers that Williams had been engaged in oilfield equipment thefts, and by the assistance of the informant in pointing out items of relevance to the thefts. The first nexus does not help petitioner because the search warrant specifically authorized the seizure of drill bits with altered serial numbers. Consequently, those items were already properly seized under the warrant. The second nexus was not specific enough because the officers did not know exactly what equipment was stolen and what legitimately belonged to Williams.

As to the third alleged nexus suggested by petitioner, we believe that it suffers from the same defect as the warrant itself. ■ We decline to expand the plain view doctrine (which is designed to place a reasonable limit on the police discretion without unreasonable interference with police activity (see *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 158) to permit

seizure of items pointed out at the scene by informants. Such a doctrine would unduly encroach upon the Fourth Amendment right to be free from *unreasonable* searches and seizures.

As discussed above, the police officer is the only party authorized to execute the warrant, not a third party. Therefore, only the police officer may lawfully be on the premises to view evidence possibly seizable as contraband. Since the officer is lawfully present, he may use his personal knowledge as long as he can articulate a sufficient nexus between the evidence and criminal behavior (*People* v. *Hill, supra*).

▆ Except as we otherwise have specifically held, the trial court's rulings as to the items seized at the residence should remain in full effect.

▆ We now turn to the search of the mini-storage shed. The trial court specifically ruled that Officer Pendleton's search was unlawful. No grounds were expressly stated supporting that ruling.

▆ The consent of a third party given to a police officer authorizing him to enter premises to conduct a search is not lawful unless the police officer reasonably believed that the consenting party had actual or apparent authority to do so (*People* v. *Carr* (1972) 8 Cal.3d 287, 298 [104 Cal.Rptr. 705, 502 P.2d 513]; *People* v. *Van Eyk* (1961) 56 Cal.2d 471, 478 [15 Cal.Rptr. 150, 364 P.2d 326]). ▆ The manager apparently believed that the shed had been abandoned and, in reliance upon that belief, placed his own padlock on the door. When Officer Pendleton arrived, the manager took him to the shed, unlocked the door, and let him enter to examine the interior. The evidence was uncontradicted that the manager believed the premises to be abandoned and that he placed his own lock on the door. Therefore, Officer Pendleton could reasonably have believed that he had authority from the manager to enter. Although all inferences and factual disputes are to be resolved in favor of Williams, there is no evidence to support a finding that Pendleton did not have such a reasonable belief. Therefore, the trial court erred in suppressing the evidence subsequently seized under the warrant. Pendleton's entry was made under a valid belief that the manager could consent to the search, and the knowledge he obtained from the entry legitimately supported probable cause to issue a search warrant for the premises.

▆

Let a writ of mandate issue directing the Superior Court of the County of Kern to vacate only those portions of its order dated October 24, 1977, granting the motion to suppress as evidence the following items:

Two 14-inch to 15-inch security hole opener cutters;
all oil and water drill bits with defaced serial numbers;
acetylene torch and Victor cutting torch; and all items
seized in the mini-storage,
and to enter a new and different order denying said motion as to those items described above.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied February 23, 1978.