Appellant was convicted of buying, receiving, concealing or aiding in concealing personal property "of Houston Waters, knowing that it was stolen, and not having the intent to restore it to the owner." The record shows that he was about eighteen years of age at the time of his conviction. He had applied for Youthful Offender treatment, which upon consideration by the court was denied.
The undisputed evidence shows that on October 17, 1978, officers of the Montgomery Police Department went to the home of the appellant and his mother to execute a valid search warrant. The search warrant pertained to a stolen television set and some stolen candy, which were not a part of the items of personal property allegedly stolen in this case. The stolen television set was not found but apparently some of the stolen candy was found. While executing the search warrant, the officers noted that in appellant's bedroom were certain items of furniture which the officers believed had been stolen from Rollin Homes, Inc.
Appellant and his mother were present at the time of the search, to which no protest was made. When one of the officers stated that the furniture had been stolen, Mrs. Hubbard said, "Morris, I told you a week ago to get that stuff out of here." Upon being told by one of the officers that he "could go get a search warrant, another search warrant for this property," she said, "No, she wanted this stuff out of there, she didn't want no stolen property in her house whatsoever." The defendant said nothing at the time. The defendant and his mother were taken to headquarters by the officers except one officer, who remained at the house guarding the stolen furniture, which was afterwards identified by Mr. Houston Waters as furniture of Rollin Homes, Inc., that was removed from one of the mobile homes of a sales lot of Rollin Homes, Inc. Upon its being identified by Mr. Waters, the furniture was removed from the home of defendant and his mother and returned to the lot of Rollin Homes, Inc.
Appellant challenges the admissibility of the testimony of Mr. Waters to the effect that the particular property was stolen one night "during the week of October 10th, 1978,"; that he discovered its removal from a mobile home on the lot between the time he had locked the home one night and returned early the next morning.
After his apprehension and he was taken to headquarters and been given plenary advice and warnings as to his constitutional rights, defendant made a statement, which was admitted in evidence, that he knew the property was stolen, that he and one Nate had gone to a place where a man that he called Sugar Tee, had "kept stuff across from the home where his Mama stays" and found the property there. He said he took two of the tables out and put them in his room and returned twice for some of the rest of the property which he put in his room. He said that meanwhile Nate had gone home. A part of his testimony is as follows:
 "Question: When you stole the furniture did you know that it was stolen?
"Answer: Yes.
"Question: Whose furniture was it?
"Answer: It was Sugar Tee's stuff.
"Question: Did you intend on keeping the furniture?
"Answer: Not long `cause it was hot.
 "Question: What did your Mama say when she saw the furniture?
 "Answer: Get it out `cause she knew she didn't have anything like that.
 "Question: What did you do then when your Mama said get it out?
"Answer: Nothing, I left it there.
"Question: Did Nate steal anything with you?
"Answer: No.
"Question: How well do you know Sugar Tee?
"Answer: Real well.
". . . . *Page 430 
 "Question: Did you know that the four tables and the chair in your room were stolen?
"Answer: Yes.
 "Question: Is there anything else that you would like to add to this statement?
"Answer: No."
Appellant insists that there was a fatal variance between the averment of the indictment that the property stolen was the property of Houston Waters and the evidence showing that Rollin Homes, Inc., was the owner of the property. Similar questions of variance between the indictment and the proof have been a source of concern for hundreds of years and have not abated. The principle is clear to the effect that it is not absolutely necessary that the evidence show that title to the property is in the person or legal entity designated in the indictment, but that if the evidence shows that if the individual or legal entity designated in the indictment has a special property right to the property, it is sufficient.
 "In a prosecution for larceny, an allegation of ownership of stolen goods is supported by proof of any legal interest or special property in them, although less than the absolute title, as where the person named as owner is in lawful possession as bailee, inn keeper, common carrier, purchaser, under a contract of sale, sheriff or constable, deputy sheriff, or receiver." 52A C.J.S. Larceny § 99
Mr. Waters was vice president of Rollin Homes, Inc., which he described as a mobile home sales lot. He was "lot manager, sales manager." He said that he owned some of the stock in the corporation, but that another individual owned most of the stock. He said that the principal owner of the stock, the wife of the principal owner of the stock, the service manager and Mr. Waters were the only persons who worked for the corporation. He said:
 "A At that particular time I would lock up in the evening and open all the homes. That would be one of my duties — that's on sales. Any of the ones working on being serviced and what have you is the responsibility of the service manager.
 "Q Now if the mobile home in question that was burglarized, who was responsible for that one?
 "A That would be me because I locked it up the night before, opened it up the next day and found the burglary."
There is some discrepancy between the witness' testimony on cross-examination from that shown on direct examination as quoted above, in that he said on cross-examination:
 "Q You had four other employees [it seemingly should be three other employees] and all of them, is it not true, had control over those trailers?
"A Yes, sir.
"Q To the same extent you did?
"A Yes, sir.
 "Q So at the time of this burglary when this stuff was taken they weren't in your special possession?
"A No, sir.
 "Q And you did not own them? They did not belong to you?
"A Well, I am a partner in the corporation, sir.
"Q You own stock in the corporation?
"A Yes.
"Q But except as a stockholder?
"A Right.
"Q You did not own this furniture?
"A Right."
We do not think, as appellant argues, that the mere fact that Mr. Waters was not in actual possession, that he did not have actual physical control, of the property, produces a fatal variance. The reason for the requirement that the owner of the property stolen be stated in an indictment charging larceny or the buying, receiving, concealing or aiding in concealing stolen personal property, is largely to prevent double jeopardy by an identification of the particular transaction. Eddy v.State, Ala.Cr.App., 353 So.2d 67 (1977). It is often simpler to state in the indictment the name of the owner of the property than the person or legal entity that is the bailee of the property, but, in many cases, particularly where the owner is a large corporation, *Page 431 
with perhaps many locations for its multitudinous items of personal property, the designation of the bailee or custodian of the property allegedly stolen serves as a better identification of the alleged theft than does the designation of the corporation itself. The court held in Davenport v.State, 53 Ala. App. 326, 299 So.2d 767, cert. denied 293 Ala. 751, 299 So.2d 771 (1974), that there was no variance between an allegation in a grand larceny indictment that the stolen property was owned by the warehouse company that was the bailee of the property, even though the evidence showed that it was owned by another company. The court cites with approval 50 Am.Jur.2d, Larceny, § 132, which states:
 "It is well settled that the ownership may be laid either in the real owner or in the person in whose possession the property was at the time of the theft. The ownership may be laid in one who has the control, care, and management of the property, or who, as a sheriff or similar officer, holds it pursuant to a levy and seizure under valid legal process. It has even been held that the ownership may be laid in one who had previously stolen the goods from the true owner. While it has been held that the ownership or possession cannot be laid in one who has merely the custody, as a servant, the property may be alleged to be that of one who was in possession as bailee, agent, trustee, executor, or administrator."
Appellant is correct in arguing that in order to constitute larceny the property must be in the possession of another at the time of the alleged theft, for larceny involves an interference with possession, but it is not necessary that the chattel be in the actual physical possession of another.
 "With respect to larceny, possession is a concept of a relationship between a person and a thing and other persons, for example, dominion and exclusion. It is not essential that a chattel should be in the actual physical possession or custody of anyone at the time it is stolen, for, notwithstanding the want of custody, the possession, in contemplation of law, remains in the person last in actual possession, until he has abandoned it or has parted with it to someone else. This principle does not apply, however, where the owner of the chattel puts it in a place over which he has no control through ownership, by agreement, or otherwise." 52A C.J.S. Larceny § 17
The very nature of a corporate entity prevents it from having actual possession of property other than through an individual representative. Mr. Waters was that representative during the time the property was stolen. There was no variance between the indictment and the proof.
Appellant argues that the evidence shows that Sugar Tee stole the property and that, according to defendant's statement, he stole the property from Sugar Tee. He extends his argument therefrom by urging that a party is not guilty of receiving stolen property "where he steals the property from the thief who stole it from the owner." He cites no authority in support of this contention. Appellee cites no authority adverse to appellant's contention. We see no need to consider it further in this case as the relationship between defendant and Sugar Tee is not shown sufficiently for a determination of whether, as between the two, the admitted act on defendant's part would have constituted larceny even if Sugar Tee had owned and been in lawful possession of the property. Although defendant answered one question of the interrogating officer that assumed he had stolen the property in such a way as to indicate that he had done so, the statement as a whole and all of the circumstances shown by the evidence do not preclude a reasonable conclusion that defendant, at the time of his action, was so linked with Sugar Tee as to carry with it Sugar Tee's permission, express or implied, to take possession of the property.
Appellant's third contention is that the conduct of one of the officers in staying at the home of defendant and his mother while they were taken to headquarters by the other officers, action on the part of someone in the police department in getting *Page 432 
Mr. Waters to come to the house in his truck to see if he could identify the property and his hauling away the property in his truck constituted a violation of defendant's right of protection against an unreasonable search and seizure, which, if true, according to Mapp v. Ohio, 367 U.S. 643,81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) would render inadmissible the testimony of Mr. Waters as to the property seized. Appellant relies upon Levin v. Blair, 17 F.2d 151 (D.C.E.D.Penn. 1927) and People v. Superior Court, 77 Cal.App.3d 69, 143 Cal.Rptr. 382
(1978).
In Levin v. Blair, the court held:
 ". . . Search warrants have nothing to do with real estate, beyond a search of it, and the officers have no right of possession, or to remain on the premises for a longer time than is reasonably necessary to execute the writ. . . ."
In their action as to the property involved here, officers in the instant case were not relying upon the search warrant, which did not include such property. While validly executing such search warrant, the property here involved came into their open view. They not only had the permission of defendant's mother, to which defendant made no protest and apparently, impliedly at least, gave his consent, but her express request that they take the property out of her apartment. In compliance therewith, one of the officers remained, made secure the premises while defendant and his mother were away, and arrangements were made for Mr. Waters to come and see the property, load it in his truck and return it to the mobile home lot. It was the only reasonable and feasible way in which they could accomplish that which defendant's mother had requested. She knew, as well as they, that the furniture could not be taken in one of the patrol cars. There is no evidence of any complaint whatever having been made by defendant or his mother as to the method employed by the officers to accomplish the request as to the disposition of the property. For the officers to have left the premises unsecured under such circumstances would have violated a duty they owed defendant and his mother, as well as their duty as public officers to the government they served. Levin v. Blair, supra, is inapt.
In People v. Superior Court, supra, it was said:
 ". . . We decline to expand the plain view doctrine (which is designed to place a reasonable limit on the police discretion without unreasonable interference with police activity (see Skelton v. Superior Court, supra, 1 Cal.3d 144, 158, 81 Cal.Rptr. 613, 460 P.2d 485) to permit seizure of items pointed out at the scene by informants. Such a doctrine would unduly encroach upon the Fourth Amendment right to be free from unreasonable searches and seizures."
The opinion also states:
 ". . . [T]he officers did not know exactly what equipment was stolen and what legitimately belonged to Williams [the `Real Party']."
This, of itself, distinguishes such case from the one now before us, in which there was already a definite understanding between the officers and defendant's mother, as well as defendant, as to the property that was to be removed from their home. Although the identification of the property by Mr. Waters was apparently not necessary, it contained no violation of any right of defendant or his mother. The conduct of the officers was commendable, rather than blameworthy. By removing the property during the presence of Mr. Waters they removed any ground of suspicion that they took from the premises any property that lawfully belonged to defendant or his mother.
There is no error in the record, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur. *Page 433