[Crim. No. 43972. Second Dist., Div. Seven. Aug. 2, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
YOUNG TOCKGO, Defendant and Appellant.

Counsel

Stephen A. Glasser for Defendant and Appellant.

John K. Van de Kamp and Robert H. Philibosian, District Attorneys, Donald J. Kaplan, Arnold T. Guminski and Maurice H. Oppenheim, Deputy District Attorneys, for Plaintiff and Respondent.

Opinion

**JOHNSON, J.**—Challenging the sufficiency of a warrant for the seizure of stolen property, defendant appeals from an order denying his motion to suppress (Pen. Code, § 1538.5, subds. (a) and (j)). We transferred the appeal under rule 62(a), California Rules of Court. At issue is the sufficiency of the description of the property to be seized. We find the search warrant on its face fails to "particularly describe" the property to be seized. We further find this failure is neither excused nor cured by the several theories advanced by the prosecution.

I. Facts and Proceedings Below

The search warrant in question was issued upon the affidavit of Los Angeles City Police Officer Frank Barkowski, which recited the following facts. On January 26, 1982, two other Los Angeles Police Department (LAPD) officers arrested one Ramirez, and another individual, who were attempting to burglarize a tractor-trailer of Certified Grocers (Certified), a wholesaler. Officer Barkowski interrogated Ramirez, who admitted that since December of 1981, he had been engaged with a former Certified employee in burglarizing Certified's trailers of cigarettes and candy and selling hundreds of cases of the stolen merchandise to two stores, one known as the Town Shop Liquor Store in Pomona (Town Shop). Ramirez described two specific instances of such burglaries and sales and Barkowski confirmed that the thefts mentioned had been reported to the authorities.

Barkowski also interviewed Certified's security officer Doum, who had reported the attempted burglary during which Ramirez had been arrested, and was told that cigarettes may be determined distinctively to be Certified's property in three fashions. First, the boxes in which cigarette cartons are packaged bear invoice numbers, records of which reflect the sender and recipient of the boxes. Second, the cigarette cartons are sealed with pigmented glue of distinctive colors unique to Certified, which may "be attested to by a representative of the company and the State Board of Equalization." Third, each pack of cigarettes bears a tax stamp which receives a

coded perforation upon packing, and the perforations, when matched to a coded template, will reflect the packing plant from which the cigarettes were delivered.

The affidavit further recited that on the day after the burglary another Certified security officer, acting for the LAPD, purchased from the Town Shop a carton of cigarettes which was sealed with Certified's distinctive green-pigmented glue. However, Barkowski had been informed (presumably by Doum) that the Town Shop was not currently a customer of Certified, and therefore should not have any of Certified's cigarettes in its stock.

Based upon Barkowski's affidavit, the magistrate issued a warrant authorizing a search of the Town Shop[1] for—and the seizure of—the following property: "cigarettes, cellophane wrappers, cigarette cartons, invoices, cash receipts, cardboard boxes, and any and all goods, and merchandise owned by Certified Grocer [sic], LTD and determined by Certified Grocers to be stolen."

Armed with this warrant, Barkowski conducted a search of the Town Shop in the company of two other LAPD officers and two employees of Certified. One of these, Robles, had with him a card employable to identify the tax stamps on Certified's cigarette packs. Using this card, Robles inspected cigarettes brought to him by the officers. At the time of the search, Barkowski had with him a copy of his affidavit upon which the warrant had been issued, but the affidavit was neither attached to nor incorporated by reference in the terms of the warrant.

Defendant, operator of the Town Shop, was charged with one misdemeanor count of receiving stolen property (Pen. Code, § 496). He moved to suppress the goods seized under the warrant on the ground that its description of the property to be seized was insufficiently particularized to satisfy governing constitutional and statutory requirements. (Cf. U.S. Const., Amend. IV [warrant must "particularly describ[e] . . . the . . . things to be seized"] with Cal. Const., art. I, § 13 [warrant must "particularly describ[e] . . . the . . . things to be seized"] and Pen. Code, § 1529 [warrant must describe property to be seized "with reasonable particularity"].)[2] The motion was denied and this appeal followed.

---

[1]The warrant also authorized search of the other store identified by Ramirez as recipient of the stolen cigarettes.

[2]Defendant also asserted that Officer Barkowski's affidavit contained an insufficient showing of probable cause. In view of the disposition we make concerning the issue of particularity of the warrant, it is unnecessary to address this asserted ground for suppression. However, we observe that defendant's contentions appear rather thin, particularly in light of the United States Supreme Court's recent decision in *Illinois* v. *Gates* (1983) 462 U.S.

## II. THE DESCRIPTION IN THE SEARCH WARRANT WAS NOT SUFFICIENTLY PARTICULAR

■ "Whether the description in the warrant of the property to be seized is sufficiently definite is a question of law on which an appellate court makes an independent judgment." (*Thompson* v. *Superior Court* (1977) 70 Cal.App.3d 101, 108 [138 Cal.Rptr. 603].) ■ The constitutional and statutory requirements of particularity are satisfied if the warrant "imposes a meaningful restriction upon the objects to be seized." (*Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590].) The "reasonable particularity" required is a flexible concept, reflecting the degree of detail available from the facts known to the affiant and presented to the issuing magistrate. Thus, while a generic description of illicit objects will be held sufficient where probable cause is shown and no more specific identification is possible (e.g., *Spinelli* v. *United States* (8th Cir. 1967) 382 F.2d 871, 886 (en banc), revd. on other grounds (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]), greater "specificity [is] required for the seizure of goods whose identity is known, such as stolen goods . . . ." (*Id.*)

■ The instant warrant, which called for the seizure of cigarettes, their containers, and all other "merchandise owned by Certified Grocers, Ltd. and determined by Certified Grocers to be stolen," fails the test of meaningful and reasonable particularity. In *Thompson* v. *Superior Court, supra,* a warrant authorizing the seizure of "stolen property illegally in the possession of the [petitioner]" was held to be insufficient. And in *Lockridge* v. *Superior Court* (1969) 275 Cal.App.2d 612, 625 [80 Cal.Rptr. 223], a warrant calling for merchandise stolen from a certain jewelry store but nowise describing the particular stolen goods was held invalid on its face. The present warrant is directly comparable: it "specified" no more than property stolen from Certified Grocers which is of a common nature (i.e., packaged cigarettes). On its face, the warrant would furnish an executing officer no guide as to what cigarettes present at the liquor store to be searched were subject to seizure as stolen property rather than immune from seizure because innocently possessed in inventory.

The vice of this uncertainty is particularly objectionable because the procuring officer's affidavit provided a ready means for effective description and identification of the particular cigarette packages to be seized: cases bearing certain invoice numbers, cartons sealed with uniquely colored glue,

---

213 [76 L.Ed.2d 527, 103 S.Ct. 2317].

Moreover, since the issue of particularity resolves itself identically under both federal and California standards, we are not called upon to consider whether the instant suppression proceeding should be governed by the "truth-in-evidence" provision of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), which was enacted after defendant filed his notice of appeal.

and packs affixed with a distinctively imprinted tax stamp. In *Lockridge, supra,* 275 Cal.App.2d 612, the court condemned the generality of the warrant for seizure of merchandise stolen from the Garcia Brothers Jewelry Store notwithstanding the People's protestation that an inventory of the stolen merchandise was not available when the warrant was sought. (275 Cal.App.2d at p. 625.) Here, the affidavit in support of the warrant *did* contain particulars identifying the goods stolen, and hence the failure of the warrant to include them is even less supportable.

III. The Failure to Provide a Sufficient Description in the Warrant Itself Is Neither Excused Nor Cured by Other Circumstances

Recognizing that the issuing affidavit contained identifying matter concerning the stolen cigarette packages that *could* have been included in the warrant to render it substantially more particular, the People offer several lines of argument as to why the warrant's failure to specify this information should be excused. First, it is argued that disclosure of the identifying information in the warrant would have impaired the confidentiality of that data. Second, the People rely upon certain federal decisions that approved "generic" descriptions of stolen merchandise as assertedly validating the instant warrant. Third, it is contended that reference may be made to the facts stated in the affidavit so as to narrow and sustain the warrant. Finally, the People argue, in a case where the affidavit and warrant disclose that identification of the particular goods to be seized will be made by the victim in the course of the search, the warrant need not contain a more particular description of those items than was provided here. We discuss these contentions in the foregoing order.

A. Confidential Information

■ The People argue that a description of the distinctive features of the stolen cigarette packages (e.g., the coded tax stamp imprints) was properly excluded from the warrant which was to be served upon defendant in order to protect the secrecy of "confidential measures used to identify fungible goods in the stream of commerce." For this proposition the People cite *In re David W.* (1976) 62 Cal.App.3d 840 [133 Cal.Rptr. 342], in which a claim of privileged official information under Evidence Code section 1040 was sustained as to the location of a secret vehicle identification on a stolen vehicle. Here, however, there was absolutely no foundational showing below that the identifying marks on the cigarette packages fell within the scope of privileged "official information," as defined by Evidence Code section 1040, subdivision (a), or indeed even that such matters as glue colors, tax stamp imprints or invoice numbers displayed on cigarette boxes are provided for "protective" identification purposes. Moreover, by disclosing the

nature of these identifying characteristics in the affidavit, a public document (Pen. Code, § 1534, subd. (a)), Officer Barkowski to that extent waived any privilege that may have existed. (And cf. Evid. Code, § 1042, subd. (b) [disclosure of privileged official information is not required to establish the legality of a search "made pursuant to *a warrant valid on its face.*"].) (Italics added.)

## B. "Generic" Descriptions Under Federal Case Law

Second, the People rely upon certain federal cases sustaining warrants that "generically" described stolen merchandise. The reasoning of these cases, however, refutes rather than supports the reasonableness of the instant warrant's description of the stolen property to be seized. In *United States* v. *Cortellesso* (1st Cir. 1979) 601 F.2d 28, a warrant authorizing the seizure from a clothing store of "stolen goods . . . which have travelled in interstate commerce, in particular men's suits, sports jackets, women's boots, leather coats . . ." was found sufficiently specific "when viewed against the facts contained in the supporting affidavits," because those affidavits established both "that stolen items constituted a dominant part of the goods on the premises" and "that labels had been removed from the Pierre Cardin suits so that a more precise description would not have assisted the officers in the field and, that with respect to other stolen items, only a generic description was known." (*Id.,* at pp. 30, 31, 32.) ■ In the present case there was no showing that defendant's inventory of cigarettes was predominantly stolen, and the affidavit affirmatively showed that the packages to be seized were identifiable by distinctive markings.

Similarly, in *United States* v. *Scharfman* (2d Cir. 1971) 448 F.2d 1352, a warrant directing the seizure from two furriers of "'fur coats, stoles, jackets, and other finished fur products,'" which comprised several hundred fur garments that had been hijacked, was upheld, the court stating (1) that the warrant could have been made more particular only had the shipper's manifest contained descriptions of the hijacked garments, which was not shown to have been the case and (2) that even with such an itemization of a few hundred garments out of thousands on the premises "the task of identifying and seizing the specific garments would have required a legion of fur experts to perform the task in a reasonable period . . . a burden on the executing officer 'beyond his power to meet.'" (*Id.,* at p. 1354.) Here, by contrast, (1) a particular description of the stolen packages was available and indeed was presented in the affidavit and (2) identification of the packages did not necessarily require a "legion of experts" to pore over thousands of only marginally distinguishable items.

■ The federal cases relied upon by the People thus exemplify the principle, here dispositive, that generic descriptions of the things to be seized

are permissible only in limited circumstances, not here presented, where the investigating and issuing authorities are unable more particularly to identify those goods. As the Court of Appeals for the Fifth Circuit has summarized: "The use of a generic term or a general description in a warrant, however, is acceptable to the judicial officer issuing the warrant only when a more specific description of the things to be seized is unavailable. . . . Failure to employ the specificity available will invalidate a general description in a warrant. . . . '[G]eneric classifications in a warrant are acceptable only when a more precise description is not possible.'" *United States* v. *Cook* (5th Cir. 1981) 657 F.2d 730, 733; accord, *United States* v. *Cardwell* (9th Cir. 1982) 680 F.2d 75, 78.[3]

### C. Use of the Supporting Affidavit to Narrow the Warrant

We also reject the People's contention that the requisite specificity may be deemed to have been supplied by the facts set out in Officer Barkowski's affidavit. As previously observed, that affidavit was not attached to the warrant when it was executed, nor did the warrant purport to incorporate the affidavit's terms by reference. ■ Absent such physical and textual incorporation, the affidavit may not be used to narrow and sustain the terms of the warrant. All of the federal courts of appeals that have considered this question have so opined. (E.g., *Moore* v. *United States* (D.C. Cir. 1972) 461 F.2d 1236, 1238-1239; *United States* v. *Roche* (1st Cir. 1980) 614 F.2d 6, 8; *United States* v. *Marti* (2d Cir. 1970) 421 F.2d 1263, 1268-1269; *United States* v. *Johnson* (3d Cir. 1982) 690 F.2d 60, 64; *United States* v. *Cook* (5th Cir. 1981) 657 F.2d 730, 736; *United States* v. *Gusan* (7th Cir. 1977) 549 F.2d 15, 16; *United States* v. *Johnson* (8th Cir. 1976) 541 F.2d 1311, 1315; *United States* v. *Hillyard* (9th Cir. 1982) 677 F.2d 1336, 1340; *United States* v. *Rael* (10th Cir. 1972) 467 F.2d 333, 335.) Further support for this limitation is found in recent California authority. (See *People* v. *Joubert* (1983) 140 Cal.App.3d 946, 952 [190 Cal.Rptr. 23] ["In determining the adequacy of the description of the place to be searched, it is permissible to look to the affidavit since the affidavit is part of the warrant and is incorporated by reference therein."].)[4]

---

[3]Of course, where the procuring authorities' ability to describe the goods to be seized is too minimal to provide a description specific enough to safeguard against a "general search" or the sweeping seizure of innocuous and unlawful objects alike, that lack of knowledge will not save the warrant from invalidity under the overriding constitutional command of particularity, which derives from the very aim of curbing and avoiding such general searches.

[4]In *Nunes* v. *Superior Court* (1980) 100 Cal.App.3d 915 [161 Cal.Rptr. 351] a search warrant directed the seizure of "'stolen property as indicated in the Affidavit and attached police report[].'" The affidavit itemized some of the property sought and also attached and incorporated by reference a police report listing other items of stolen property. However, the affidavit and attached reports were not themselves attached to the warrant, and when

The rationale for the restriction is clear and cogent: a principal purpose of the warrant is to confine the discretion of the executing officer (e.g., *Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74]), and "the executing officer may not have a copy of the affidavit or even have knowledge of its contents when he serves the warrant." (*Thompson* v. *Superior Court, supra,* 70 Cal.App.3d at p. 109.) Accordingly, "the scope of the officer's authority is determined from the face of the warrant and not from the affidavit" (*id.*), except where the latter is part of the former. We thus adhere to the previously stated rule that "in determining the property to be seized pursuant to a warrant, we are confined to the four corners of the warrant." (*Id.*, at p. 112; accord, *People* v. *Superior Court (Williams)* (1978) 77 Cal.App.3d 69, 75 [143 Cal.Rptr. 382].)[5]

### D. Determination by the Victim of the Things to Be Seized

Finally, the People contend that the warrant's reference to property "determined by Certified Grocers to be stolen" was sufficient because signalling that the identification of the particular packages subject to seizure would be made, as apparently it was, by an employee of the victim upon execution of the warrant. The People reason that such a "victim-assisted" search does not admit of the constitutional hazards of general rummaging by law enforcement officers, because a victim has less incentive than an officer to invade the legitimate privacy of the premises and things to be searched, and thus that a warrant phrased in this manner should be deemed to pass constitutional muster.

We find both the premise and the conclusion unconvincing. The premise that the victim of a theft will search for the fruits of the crime less intrusively than a police officer is less than self-evident; indeed, common psychology suggests otherwise. Well in point is Justice Mosk's dissenting observation in *People* v. *Superior Court (Meyers)* (1979) 25 Cal.3d 67, 84-85

---

executing the warrant the officer had the affidavit in his possession but did not serve it upon the defendant. (*Id.*, at pp. 920-921.) The Court of Appeal for the Fifth District upheld the warrant against a claim of insufficient particularity, reasoning that the terms of the warrant incorporated by reference the specific listings contained in the affidavit and police report, and that the officer's possession of the affidavit and report when searching limited the scope of the search. (*Id.*, at p. 935.) *Nunes* provides no aid to the People here, for in *Nunes* the warrant's description of the property to be seized used terms of reference directly to the affidavit's and report's specific listings, whereas the instant warrant did not.

[5]The People suggest that the *Williams* case contradicts *Thompson* on this score because the *Williams* court at one point stated that "[w]e are required by the Constitution to determine if the *affidavit* and the warrant describe the property with [reasonable] particularity, i.e., place a meaningful restriction on the objects to be seized." (77 Cal.App.3d at p. 76.) (Italics added.) This language, however, must be read in contrast with the court's earlier statement, citing *Thompson,* that "[w]hen reviewing a ruling on the sufficiency of the warrant, this court is limited to the four corners of the warrant itself." (77 Cal.App.3d at p. 75.)

[157 Cal.Rptr. 716, 598 P.2d 877], set out in the margin.[6] ■ Moreover, the contention that authorization for identification by the victim of the goods to be seized is a permissible substitute for available additional particularity in the warrant itself simply ignores the basic constitutional requirements. As restated by Justice Mosk in his *Meyers* opinion, "[s]ince their adoption both [the Fourth Amendment and article I, section 13 of the California Constitution] have clearly provided that the warrant—not the victims of the crime—must 'particularly describe' the place to be searched and the 'things to be seized.'" (25 Cal.3d at p. 79.)

In this regard, the People's reliance on *People* v. *Superior Court (Meyers), supra,* is misplaced. In *Meyers,* the Supreme Court approved a seizure of stolen items found in "plain sight" during a search made by police officers accompanied by the victim of the theft, who pointed out to the officers these objects, many of which were not referred to in the warrant under which the search was conducted. In approving this method of executing a warrant, however, the court commenced its discussion by observing that the warrant itself was eminently specific and sufficient as to the property it authorized to be seized. (25 Cal.3d at p. 74.) The holding of *Meyers* was thus that a search authorized by a reasonably particularized warrant may be conducted using the aid of the victim to identify otherwise innocuous items that have been specifically described in the warrant and also to identify other items as to which the victim's knowledge will provide the "nexus" required to authorize their seizure when found in plain sight (see *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds; *People* v. *DeVaughn* (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872]). While *Meyers* therefore would have validated the employment of Certified's security officer Robles in the present case to assist the executing officers in conducting their search *were the warrant validly particular, Meyers* neither diminishes the requirement of a particularized warrant to authorize the search in the first place nor stands for the proposition that on-the-scene identification of stolen property overbroadly referred to in a warrant may be used to narrow and validate the language of the warrant retroactively.

---

[6]"A police officer has no personal interest in the property to be seized in a search for stolen goods; he is therefore able to conduct himself objectively in looking for and identifying that property. The victim of the theft, by contrast, is both deeply interested in the proceedings and lacks the officer's training and experience. Accordingly, either because of the excitement engendered by the prospect of recovering his goods, or the confusion resulting from seeing such goods intermingled with the property of another in a strange environment, or a feeling of vindictiveness towards the person who purportedly stole from him, or even ordinary greed—or indeed a combination of these emotions—there is a risk that some victims will lead the police to unnecessarily broaden or lengthen the search or to seize property not actually stolen from them."

Rather, the decision here in point is *People* v. *Superior Court (Williams)*, *supra*, 77 Cal.App.3d 69. There the court declined to approve a search and seizure conducted pursuant to an insufficiently specific warrant notwithstanding that an informant who had knowledge of the offense had accompanied the officers executing the warrant and had pointed out stolen items that were insufficiently described in the warrant. The court stated, in language fully applicable here: "Specificity must be shown in the warrant itself and cannot be supplied at the scene by the informant." (77 Cal.App.3d at p. 79.) While the Surpeme Court in *Meyers* subsequently disapproved in *Williams* "to the extent that it would prohibit a third party's on-the-scene identification of contraband *during the execution of a valid search warrant*" (25 Cal.3d at p. 76, fn. 9 [italics added]), it did not disapprove *Williams'* above-quoted pronouncement: the terms of the warrant, not the observations of a victim accompanying its execution, must provide the particularity required by the Constitution in order to render the warrant and the search valid. That holding is compelled by both the language and the underlying policies of the constitutional requirements of particularity in warrants. We reiterate it today.

### DISPOSITION

The order denying defendant's motion under Penal Code section 1538.5 is reversed and the case is remanded with directions to grant the motion.

Schauer, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied August 22, 1983, and respondent's petition for a hearing by the Supreme Court was denied October 27, 1983. Richardson, J., and Kaus, J., were of the opinion that the petition should be granted.